STATE INSURANCE FUND, a
Department of the State of
Oklahoma, Appellant,

v.

ORIOR, INC., Miller Trucking Company,
J & M Leasing, Inc., and Stroud Main-
tenance, Inc., corporations, Edward L.
Handlin, Manzo Miller, M.E. Handlin
and Betty Handlin, individuals, Appel-
lees.

No. 59724.

Court of Appeals of Oklahoma,
Division No. 1.

April 24, 1984.

Rehearing Denied June 12, 1984.

Certiorari Denied Sept. 18, 1984.

Approved for Publication by Order of the
Supreme Court Sept. 18, 1984.

Cheek, Cheek & Cheek by Rodney
Hayes, Oklahoma City, for appellant.

Kornfeld, Satterfield, McMillin, Harmon,
Phillips & Upp by Eric A. Overby, Okla-
homa City, for appellees.

YOUNG, Presiding Judge:

The State Insurance Fund filed suit
against various corporations and individu-
als to recover premiums due on a workers'
compensation insurance policy. The only
issue in this appeal concerns the individuals
who were directors and officers of the cor-
porate defendants. The Fund seeks judg-
ment against the individuals because of the
corporations' suspensions for failure to pay
the Oklahoma Franchise Tax under 68 O.S.
1981 § 1212, which provides:

> (c) Each trustee, director or officer of
> any such corporations, association or or-
> ganization, whose right to do business
> within this State shall be so forfeited,
> shall, as to any and all debts of such
> corporation, association or organization,
> which may be created or incurred with
> his knowledge, approval and consent,
> within this State after such forfeiture
> and before the reinstatement of the right
> of such corporation to do business, be
> deemed and held liable thereon in the
> same manner and to the same extent as
> if such trustees, directors, and officers of
> such corporation, association or organiza-
> tion were partners.

The facts are not in dispute. In Decem-
ber, 1979, the corporate defendants made
application to renew a policy from the
Fund. The existing policy was due to ex-

pire on January 1, 1980, and the new policy was for the calendar year 1980. The renewal application contained various job descriptions and the estimated total wages to be paid each class of workers during 1980.

The Fund accepted the renewal application and issued a policy for the year 1980. The premiums were to be calculated and determined on the basis of the total wages paid to the employees of the insured during the year.

On May 23, 1980, the corporations were suspended by the Secretary of State upon order of the Oklahoma Tax Commission for failure to file Annual Franchise Tax Returns. They were reinstated later which was long after the policy in question expired by its own terms on January 1, 1981. The Fund seeks to recover from the individuals a portion of the premiums—that part due from the suspension date of the corporations until the expiration date of the policies.

The individuals assert that the debt was created or incurred before suspension; therefore 68 O.S. 1981 § 1212 is not applicable. The trial court agreed and sustained a motion for summary judgment for the individuals "for the reason that the debt ... was incurred prior to the suspension."

The suspended corporations continued with business as usual with knowledge, approval, and consent of the individual appellees after suspension.

To determine when the premium debts were created or incurred, a review of the policy and manual is necessary.

The policy provided for a deposit premium of $13,782.00 as per the policy manual:

A deposit premium is payable at the inception of the policy and shall be no less than Minimum Premium. The deposit is paid prior to the inception of a new policy, is transferred to the renewal, and is adjusted. The deposit on reporting policies will not apply to any premium payments. It is based on the estimated annual premium and will be credited to the final premium adjustment when coverage is no longer provided.

The deposit premium on reporting policies is determined in accordance with the Workers' Compensation & Employers' Liability Manual and shall be as follows: Monthly—No less than 25% of the estimated annual premium.

Also, the policy provided that the total estimated annual premium was $55,128.00. The reason it was estimated is explained by the policy manual.

The amount of premium charged for a policy is dependent upon rules, classifications and rates as set forth in the Basic Workers' Compensation Manual issued by the National Council of Compensation Insurance. Amount of remuneration, classifications and type of ownership are factors that determine premium costs. Annual premium must be estimated since the exact remuneration for the policy cannot be determined until the policy is audited at the end of that period.

The policy provided that the insured file monthly payroll reports and pay monthly premiums based upon that month's payroll. If there were no payroll for that month, no premium would be due.

At the end of the policy period, an audit was authorized by the policy manual, and the total actual premium was to be determined.

The Fund seeks to recover only the premiums earned after suspension and before policy expiration; therefore our discussion only covers that period.

In *Phillips & Stong Eng. Co. v. Howard B. James Assoc., Inc.*, 529 P.2d 1013 (Okl. App.1974), a corporate director was held personally liable under 68 O.S.1981 § 1212(c) under a rental agreement of his corporation. In that case, the corporation agreed to pay monthly rental on a building on a month-to-month lease. The court found that the debt was not created or incurred when the written lease was signed, but when the rent came due each month.

We can see an uncanny analogy between the above case and the facts in this case. The Court found the corporation not actionably liable for the monthly rent until the first of each month. The insured was not liable for the monthly premiums unless it incurred a payroll that month.

Since the rent became due after suspension, it could not be a debt created earlier. Likewise, because the premiums became due after suspension, they could not be a debt created earlier. The payroll created the premiums, thus the debt could not have been created before the payrolls during the suspension months. The creature can never precede its creator.

We find the premiums earned from May 23, 1980, to January 1, 1981, were created or incurred while the corporations were suspended. Judgment reversed.

REVERSED AND REMANDED.

REYNOLDS and ROBINSON, JJ., concur.